CALLAWAY *v.* ARMOUR; *et vice versa.*

Nos. 17471, 17472. Argued May 14, 1951—Decided June 11, 1951.

138

*Colley & Orr* and *Wilbur A. Orr Jr.,* for plaintiff in error.
*Clement E. Sutton,* contra.

HEAD, Justice. ■ The general grounds of the motion for new trial and the motion in arrest of judgment may be considered together, since both motions attack the sufficiency of the description relied upon by the plaintiff to sustain a recovery by him. The plaintiff testified that he owns land on both sides of the present highway running through the property purchased by him from Richardson, and formerly conveyed to Mrs. Wicker by the heirs of Mrs. Lila M. Richardson. From the testimony of W. A. Broach, and the plats made by him, it appears that the present highway is 200 feet in width. There is no testimony in the record as to when this highway was constructed. Prior to an act approved March 24, 1939 (Ga. L. 1939, p. 187), the highway department was not authorized to acquire lands in excess of 100 feet in width for right of way purposes. The plat made by A. C. Porter, in 1922, of the lands conveyed by the heirs of Mrs. Richardson to Mrs. Wicker, in September, 1922, can not, therefore, be presumed to show the highway as it presently runs.

The plaintiff described the lands sued for "as beginning at a stake or point in middle line of present Washington-Lexington Highway, and running thence along the middle line of said highway north 76½ degrees east 1.27 chains; thence north 80½ degrees east 1.51 chains; thence north 83½ degrees east 1.51 chains; thence north 88½ degrees east 1.51 chains; thence south 88½ degrees east 9.09 chains to a stake or point at corner of Mrs. John Allen Callaway's tract acquired from Mrs. Lila M. Richardson estate; thence along line of the tract owned by Mrs. John Allen Callaway, south 1½ degrees west 34.06 chains to a stake; thence south 76 degrees west 3.34 chains to a stake adjoining Richardson lands; thence north 8¾ degrees west 27.64

chains to a stake; thence north 12½ degrees west 8.45 chains to the beginning point."

To set forth this description is to disclose its insufficiency. There is no definite beginning point, nor is there anything in the description from which such point might be located or made definite. It is true that one course and distance is "to a stake or point at corner of Mrs. John Allen Callaway's tract," but it is the location of this very line that is in dispute, Mrs. Callaway contending that her line extends to a certain hedgerow, which contention the plaintiff disputes. None of the calls in the description from the point in the highway to the alleged corner of Mrs. Callaway's land is in accord with, or supported by, the plat made by A. C. Porter in 1922.

The surveyor, Broach, testified that he did not have the plat of survey made by A. C. Porter (Exhibit A) at the time he made his survey (Exhibit C), and that he procured his information from the plaintiff. The Broach plat (Exhibit C) does not show any fixed monument or natural landmark, nor is there any measurement shown from any point on the plat to a fixed landmark or monument. The words, "Middle line present highway," do not indicate whether the surveyor claims to have started his survey on a middle line of a paved surface, or the middle line of a highway right of way 200 feet wide. The middle line of a paved surface and the middle line of a right of way for highway purposes are not necessarily the same, and frequently may be different. From what source did the plaintiff get his information which he gave to the surveyor, Broach? Not from the plat of Porter, because every course and distance shown on the plat made by Porter conflicts with the courses and distances shown on the plat made by Broach. In so far as having any value in locating a disputed or contested line, Broach's plat might just as well have had as its beginning point, "a place or point selected by J. W. Armour," in the middle line of the present Washington-Lexington Highway.

None of the three plats made by Broach agrees with the survey of Porter on the north, along the highway right of way, and none of them agrees with the survey of Porter as to the east line, which is the line the plaintiff seeks to establish by his ejectment proceeding. The Porter survey of the lands conveyed to Mrs.

Wicker shows the east line as running south 34.70 chains. The plaintiff's Exhibit C, which is the plat from which the plaintiff's description of the lands claimed by him is taken, shows the line to have been run south 1½ degrees west 34.06 chains. The plaintiff's Exhibit D, which purports to be a plat of all of the plaintiff's lands, shows the east line to be running south ¾ degrees east 34.70 chains, and the plaintiff's Exhibit E shows the east line to be running south 35.08 chains. The plaintiff's plat (Exhibit C), upon which he relies, is not aided by the testimony of either the plaintiff or his surveyor. The testimony of the plaintiff clearly shows that he did not know the location of any line of his property. The testimony of the surveyor, that "there may be mistakes in all these plats," is supported by actual errors admitted by him.

The plaintiff's description of the lands claimed by him was not sufficiently definite, and there was no evidence to support a finding that the plat and survey of Broach were correct.

■  Upon the former appearance of this case in this court (*Callaway* v. *Armour*, 207 *Ga.* 229), it was held that the testimony of Mrs. Callaway and Mrs. Wicker was uncontradicted as to their having agreed upon the hedgerow line claimed by Mrs. Callaway, and it was further pointed out that the testimony showed possession up to the agreed line by Mrs. Callaway. The testimony in the present case is substantially the same as in the former case; there is no material variation. While it is true that the plaintiff at one place in his testimony stated that, when he cut the timber purchased from Richardson (on the lands now owned by the plaintiff), he cut over the line claimed by Mrs. Callaway, his other testimony clearly shows that he did not know, and did not claim to know, any of the lines of the Richardson tract at the time he purchased the property. On cross-examination, he admitted that he would not have cut any timber across the line of Mrs. Callaway had he known the location of the line claimed by her.

The plaintiff's knowledge of any lines may be gathered from the following extracts from his testimony. On direct examination he testified: "I did not know anything about the lines of the land other than as shown by the plat under which I bought. . . I am sure it was in 1945 that I went to look at the bound-

ary lines of the land I bought in 1944. . . . I didn't know where any lines were, Sam [Richardson] didn't tell me the lines and I didn't know where they were, hadn't surveyed or anything; . . I couldn't tell you whether she was then contending that the line was down to hedgerow, I never did know what she was contending. . . I have cut timber off that land. I bought it from Sam, in 1942 or 1943, before I bought the place in 1944. When I was cutting timber I didn't know anything about a line claimed by Mrs. Callaway as a hedgerow. I did not respect such a line in reference to cutting timber. . . Before I bought the land from Mr. Sam Richardson I cut the timber clean to where I claim the line to be and not to Mrs. Callaway's line."

On cross-examination, with reference to the cutting of the timber, the plaintiff testified: "When I bought the timber from Sam and cut it, I don't remember that he told me where the lines were. I don't remember how I would know where to cut; it has been a long time. I would not have cut over on her land knowingly. I evidently had some information but I don't know what it was; I can't remember that far back. . . I really came into possession in 1945. What agreement there was and what happened with the land prior to that time I don't know."

On the question of Mrs. Callaway's possession at the time the plaintiff purchased the land, the plaintiff testified (on cross-examination) as follows: "I didn't know Mrs. Callaway's tenants were working any of that land. I say she is working 12 or 15 acres now. I suppose she was working it when I bought it. I went to Mr. John [Callaway] and told him I thought she was working some of my land. When I bought it I didn't know it. Somebody was in possession when I bought it. I bought it without inquiry."

This testimony, which is typical of the testimony of the plaintiff with reference to his knowledge of the land lines prior to his purchase of the Richardson land, and of his efforts to ascertain where the lines might be, is wholly insufficient to make any conflict in the evidence as to the agreement between Mrs. Wicker and Mrs. Callaway that the hedgerow should be the line, as set out and shown in the former decision of this case.

Counsel for the plaintiff cite *Miller* v. *McGlaun,* 63 *Ga.* 435, and *Taylor* v. *Board of Trustees,* 185 *Ga.* 61 (194 S. E. 169), as authority for the contention that the agreement beween Mrs. Wicker and Mrs. Callaway would not be binding upon the plaintiff. Neither case is in point with the facts in the present case. In *Miller* v. *McGlaun,* supra, it was held that there was no occupancy of the part in dispute so as to affect a subsequent purchaser without notice of the agreement. In *Taylor* v. *Board of Trustees,* supra, it was held that, "The rule that a parol agreement between owners of coterminous properties that a certain line is the true dividing line is valid and binding . . has no application to a state of facts in which at the time of the parol agreement there was no disputed line to be agreed upon."

In the present case, the coterminous owners, Mrs. Wicker and Mrs. Callaway (the defendant), held title to their respective tracts when the agreement as to a dividing line between their properties was made. The survey made by Porter did not indicate any dividing line between their tracts by natural boundaries, or otherwise than by courses and distances. It is insisted by counsel for the plaintiff that the line was not unascertained because a survey would establish the location of the line. Whether or not a survey might locate the line, the line was not so located, and was not marked in any way at the time the agreement was entered into between Mrs. Wicker and the defendant. Under the evidence in this case, the defendant's cultivation and acts of ownership of the land in dispute were so open and notorious as to constitute notice of her claim, and any reasonable degree of diligence on the part of the plaintiff would have revealed her possession and claim of title.

The contention that Mrs. Wicker was estopped from testifying as to the line agreed upon with her sister, Mrs. Callaway, because she later conveyed her property without reference to the agreed line, is not sustained by the cases cited. Estoppel by deed applies only to parties and their privies. Mrs. Wicker is not asserting any claim and is not a party to the cause.

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill. All the Justices concur.*